IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONNIE COUCH                                                    PLAINTIFF

v.                              Civil No. 2:16-CV-02035-PKH-MEF

CORRECTION OFFICER REGI FRAZIER,                    DEFENDANTS
CORRECTION OFFICER JOE SALYERS,
SHERIFF BILL HOLLENBECK, and
OFFICER BRAY

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Ronnie Couch, pursuant to 42 U.S.C. § 1983.

Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC").  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Hon. P. K. Holmes, III, Chief United

States District Judge, referred this case to the undersigned for the purpose of making a report and

recommendation.

Currently before me is Defendants' Motion for Summary Judgment.  (Doc. 30)  A

Summary Judgment hearing was held on December 15, 2016, to permit Plaintiff to respond orally

to the motion.  (Doc. 43)  After careful consideration, the undersigned makes the following Report

and Recommendation.

### I.  BACKGROUND

Plaintiff filed his Complaint on February 24, 2016, 2014.  (Doc. 1)  He filed an Amended

Complaint on May 17, 2016.  (Doc. 15)  Plaintiff alleges Defendants failed to protect him from

assaults by other inmates on three occasions while incarcerated in the Sebastian County Detention

Center (SCDC).  Plaintiff alleges that on June 16, 2016, he was assaulted when he and Inmate

Tibbits were passing out commissary items to inmates in the BC Pod.  Plaintiff alleges he told Defendant Frazier that the Cell 22 inmates, who were out for their one hour of exercise, needed to be locked back up due to theft of commissary items in the past and because they were a different color group.  Plaintiff alleges Officer Frazier told him it would be "okay" despite the fact that the inmates in Cell 22 were another color group than Plaintiff, and color groups were to be kept separate.  Plaintiff was in the green color group, which was for sex offenders.  Plaintiff alleges Inmate Tibbits mistakenly gave another inmate's commissary to Inmate Beagles' cellmate, and Plaintiff informed Beagles about the mistake.  Beagles called him a snitch, and then Inmate Cobbs[1] threw a mop bucket at him, striking him in the head.  In his Complaint, Plaintiff alleges Defendant Frazier stood at the hallway door talking and did nothing to stop the argument or the assault.  (Doc. 15, p. 5)  At the hearing, Plaintiff testified Frazier stood outside of the day room between the gates to the hallway and the dayroom.  He further testified Frazier should have been making fifteen minute rounds and was not.  Defendants provided a video of this incident.

Plaintiff testified he suffered a knot on the head from the bucket.  He did not believe he was bleeding, but because he was hit on the back of the head, he was not sure.  He testified he was seen by an MA[2] instead of a nurse, and the MA was not qualified to tell if he had a concussion. He asked to see a medical doctor, for a CAT scan, and for an MRI, but did not receive any further evaluation.  He testified he put requests into the kiosk, but they disappeared.  He testified he now

---

[1] The name of the inmate who threw the mop bucket was not identified in Plaintiff's Complaint.  Instead, he was described as a young black man standing outside Cell 29.  Inmate Cobbs was identified in the incident report.

[2] Medical Assistant

has tunnel vision, headaches, and memory loss as a result of this injury.  When he was transferred to the ADC, he told the intake nurse about the incident, but he felt they did not take him seriously because he did not receive an MRI.  He asked for an MRI, but he only received ibuprofen or naproxen for his headaches.  Plaintiff testified he saw an eye doctor at the ADC and talked to him about his alleged vision problems.  He testified the doctor "didn't say much," and he could not remember if the doctor had suggested any further testing or evaluation for his vision.  When Plaintiff was asked if he had any medical evidence of health issues after being struck by the mop bucket, he stated he could not prove headaches without an MRI or some other type of brain scan.

Medical records from June 16, 2016, indicate Plaintiff presented with a "knot on the back of the head" and a scrape to the right forefinger.  The knot was described as superficial with no bleeding.  The scrape was described as superficial with little bleeding.  (Doc. 32-3, pp. 7-8)  A review of the seven-minute video showed Plaintiff and another inmate either talking or looking to the left of the screen.  A third inmate came in and out of the video footage – pacing, standing at the door, and pacing again.  Plaintiff and the other inmate did not seem to be concerned by the presence of, or pay any attention to, the activities of the third inmate.  At one point the pacing inmate came up behind Plaintiff and threw a mop bucket at him, striking him in the head.  Plaintiff stood up and felt his head several time before guards came in and he walked off the screen.  Guards took the assaulting inmate out in handcuffs.  Shortly thereafter, Plaintiff is walked out of the room, also in handcuffs.  (Doc. 32-5)

Plaintiff testified the video clip was too short.  He alleges there was a verbal argument before the bucket was thrown.  Plaintiff testified Beagles was yelling "snitch."  He testified other people were yelling about the commissary.  He believed Cobbs said something to him before he threw the mop bucket, but there were other people yelling as well, so he "could not say for sure."

Plaintiff testified that prior to this incident, Beagles and Cobbs engaged in derogatory name calling and threats against him because he was a sex offender. He testified Beagles said he would hit him if he could, and Cobbs said he wanted to "rub his [Plaintiff's] butt, blah blah blah." He testified the comments were "pretty much the same stuff as most inmates." He testified Cobbs would try to get into a fight whenever he walked by Plaintiff's cell.

In response to questions from Defense counsel, Plaintiff testified Cobbs and Beagles should not have been in green color group because they had been involved in altercations, and the green color group was a protective custody group. He thought Cobbs might be orange group. Plaintiff testified he had passed out commissary twice a week for about three months, and this was the first time there had been any problems during commissary distribution. Plaintiff did not remember how long Cobbs had been in the pod, but June 16, 2016, was not his first day in the pod. Plaintiff agreed other inmates were yelling "snitch" and other derogatory terms related to his charges. Plaintiff testified that he was yelling back, and defending himself, stating he was only doing his job. He further told the other inmates they would not like it if the mistake was with their commissary. Plaintiff testified he was "not exactly sure all of who did say it," but there were comments that day from the other inmates such as "this isn't over yet," and "we're going to get you." Plaintiff testified that this sort of yelling was not common. He further testified that this was the first day he had received these types of comments.

Plaintiff further alleges he was assaulted in two incidents on June 28, 2016. Plaintiff alleges Defendant Salyer and a 309 inmate were passing out "fresh favorites." Plaintiff alleges Inmate Beagles was out of his cell, and Salyers failed to lock Beagles in even though he knew about the June 16, 2016, incident, and Beagles was in a different color group. He testified he could

have seen that Beagles did not go back to his cell.  He testified that he was signing the receipt for

his fresh favorite, when Beagles rushed up behind Salyers, reached over Salyer's shoulder, and hit

Plaintiff in the head with his hand.  He testified he was taken to the nurse, and he believes the nurse

told him the back of his neck was red.  Plaintiff did not enter any additional kiosk requests for care.

Instead, he asked the nurses when they came around.   He characterized this as an ongoing injury

because he had already been injured in the head by the mop bucket.  No medical records were

submitted for this incident, but the incident report states Plaintiff was evaluated by the nurse and

received no injuries.  A correction to the report states Plaintiff had some redness.  (Doc. 32-3, p.

5)

Plaintiff testified he did not believe Defendant Salyers intentionally violated policy, but he

could have seen that Beagles was not in his cell.  After explanation by the Court, Plaintiff agreed

that this was negligence.

In response to questions from defense counsel, Plaintiff testified he heard Salyers tell

Beagles to go back to his cell.  Salyers then turned his attention to Plaintiff.  He testified that the

entire incident happened very quickly; he only had time to turn his head.

The second incident on June 28, 2016, occurred in the recreation yard.  Plaintiff alleges he

was assaulted by Inmate Chestine.  Plaintiff testified he told the daughter of an older inmate that

other inmates were taking the older inmate's commissary money.  He spoke to Chestine about the

commissary issue, and Chestine choked him and tried to head-butt him.  Plaintiff testified he did

not have any injuries other than being choked, and he was seen by the jail nurse.  Medical records

indicate no injuries for what is specifically characterized as Plaintiff's second fight of the day.

Examination noted a red area at the top of Plaintiff's head, but noted that Plaintiff did not point to

this area when asked about an injury. (Doc. 32-3, p. 9) Plaintiff believed Defendant Bray could have intervened in the altercation sooner.

A review of the video supplied by Defendants for this incident showed a portion of the yard, so Plaintiff and Chestine were not continuously present in the video. A few seconds into the video, Plaintiff and Chestine walk into view. They appear to be facing off at each other, but not striking or otherwise touching each other. Other inmates in the yard gather to watch. At 41 seconds into the video, a guard walks into view and breaks up the interaction. Plaintiff and Chestine walk off-screen. The guard remains in the yard and appears to be talking to the other inmates. At 46 seconds, Plaintiff and Chestine reappear. Plaintiff turns and gestures or points at Chestine. Chestine pushes Plaintiff from behind, then pulls him backward and jumps on his back. Plaintiff remains standing, and then attempts to dislodge Chestine by slamming repeatedly against a wall. Chestine appears to be physically much smaller and lighter than Plaintiff. The guard approaches the two, then turns and directs other inmates from the yard at one minute and three seconds. The guard walks quickly out the door. Chestine tries to head-butt Plaintiff. Plaintiff is still standing. At one minute and 24 seconds, the guard reappears, followed by five other guards. The guard pulls Chestine from Plaintiff's back, and the other guards appear to pull both Plaintiff and Chestine to the ground. By one minute and 37 seconds, Plaintiff and Chestine and separated and surrounded by guards. A sixth guard enters. At two minutes and one second, Chestine is walked out of the yard. Plaintiff is then allowed to stand against the wall. Several guards are facing him, and appear to be talking to him. Plaintiff walks out of the yard behind the guards at three minutes and 45 seconds. (Doc. 40-5)

In response to questioning by defense counsel, Plaintiff testified he spoke to Defendant Bray about the commissary issue for the older inmate. Defendant Bray told him not to talk to Chestine. Plaintiff talked to Chestine, and Chestine did not "jump" him right away. Plaintiff and Chestine were in the recreation yard together for nearly an hour. Plaintiff testified he did not expect Inmate Chestine to assault him. He further testified Chestine was in the same color group as Plaintiff.

In his Complaint, Plaintiff alleges he named Sheriff Hollenbeck in the law suit because he did not enforce the policies of the Sebastian County Detention Center. He holds him responsible for putting an ineffective color group policy in place, and for his deputies not having a "safe and secure environment free from the threat of other inmates of different color groups." (Doc. 15, p. 6) At the hearing, Plaintiff testified he was suing the sheriff because he was the sheriff and he oversees the jail. Plaintiff testified Defendant Hollenbeck had no personal involvement with the alleged incidents.

Plaintiff did not indicate whether he was suing Defendants in their official capacity, personal capacity, or both. After explanation of the types of claims by the Court, Plaintiff testified he did not have any official capacity claims.

Plaintiff requests punitive damages in the amount of $250,000, plus $25,000 for a state tort law claim, mental anguish damages in the amount of $1,000,000, attorney's fees, and he demands trial by jury. (Doc. 15, p. 6)

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants argue summary judgment is appropriate because: (1) Defendants did not fail to protect Plaintiff because these were surprise attacks and Plaintiff suffered, at most, *de minimis* injuries; (2) Defendants are entitled to qualified immunity because these were surprise attacks; and, (3) there is no basis for official capacity/county liability.  Plaintiff has testified he had no official capacity claims, therefore these claims need not be addressed.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v.*

*Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: show, first, that he was "incarcerated under conditions posing a substantial risk of serious harm," and, second, that the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective, requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Further, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." *Id.* In *Irving*, the inmate was assaulted by another inmate at the instigation of prison guards. He suffered injuries to his jaw and nose, which caused him difficulties in breathing for two months after the attack. *Id*. at 445. The Eighth Circuit held that these injuries were sufficiently serious to support a failure to protect claim. *Id.* at 448. *See also Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) ("It is . . . beyond dispute that rape or sexual assault at the hands of other prisoners is sufficiently serious to amount to a deprivation of constitutional dimension.") (internal quotations omitted); but, *cf.*, *Ellis v. Bass*, 982 F.2d 525, *2

9

(8th Cir. 1992) (unpublished) (irritation to inmate's skin and eyes caused when another inmate

threw a bucket of a bleach and cleanser solution over him was *de minimus* at most); *Chavero-*

*Linares*, 2013 WL 5655559, *8 (N.D. Iowa 2013) (scratch or cut on cheek that Plaintiff received

when another inmate threw a chair at her, which required only one pain pill for treatment, was *de*

*minimis* injury).

Several Circuits have utilized the test enunciated in *Luong v. Hatt*, 979 F. Supp. 481, 486

(N.D. Texas, 1997) to evaluate the seriousness of the injury.  In analyzing an Eighth Amendment

failure to protect claim, the court first noted that *Siglar v. Hightower*, 112 F.3d 191 (5th Cir 1997)

provided no definition of a physical injury or a *de minimis* injury pursuant to 1997e(e).  *Id.* at 486.

It then stated:

> "A physical injury is an observable or diagnosable medical condition requiring
> treatment by a medical professional.  It is not a sore muscle, an aching back, a
> scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. . .
> Injuries treatable at home [by a free world citizen] and with over-the-counter drugs,
> heating pads, rest, etc., do not fall within the parameters of 1997e(e)."

*Id.*; *see also Perez v. United States*, 330 F.App'x 388, 389 (3d Cir. 2009) and *Jarriett v. Wilson*,

162 F.App'x 394, 401 (6th Cir. 2005) (using the *Luong* test).

The Ninth Circuit found the *Luong* test required "too much," but also held that "any injury"

is "too little" as an injury requirement.  *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir 2002).  In this

case, back and leg pain caused from overcrowded cell conditions, undescribed physical injuries

from a fight in the cell, and a canker sore were not more than *de minimis*.  *Id.* at 629.

Under any of these tests, Plaintiff's injuries were *de minimis* at most.  Based on Plaintiff's

own testimony, the only injury he suffered from any of these incidents was a knot in the head when

Cobbs struck him on the head with the mop bucket, and the fact that he was choked by Inmate

10

Chestine in the recreation yard.

Plaintiff did not allege any injuries from the incident when Inmate Beagles reached over Defendant Salyer's shoulder and struck him. He testified he believed the nurse told him his neck was red. No medical records were submitted for this incident. The incident report indicated Plaintiff was evaluated by a nurse, and Plaintiff had no injuries other than some redness. Plaintiff testified he did not place any kiosk requests for care after the initial evaluation.

The videos for the incidents with Cobbs and Chestine showed that Plaintiff remained conscious and standing at all times. After both incidents he was able to walk out of the area without help, and no signs of injury were apparent on the video. The medical records for the incident with Cobbs stated his injuries were superficial, with no bleeding from the knot on his head, and little bleeding from the scrape on his right forefinger. The medical records for the incident with Chestine indicated no injuries were apparent. No treatment was listed for either incident. The June 16, 2015, incident report regarding Inmate Cobbs and the bucket stated there were no injuries requiring treatment.

Plaintiff also alleged he suffers from headaches, tunnel vision, and memory loss as a result of his knot on the head. He does not, however, provide any medical evidence that he ever sought or received treatment for these symptoms. Instead, he testified that the kiosk entries at SCDC disappeared, despite Plaintiff's numerous other kiosk entries provided by Defendants. He further testified he discussed the issue with the intake nurse at the ADC, but he did not receive treatment, other than ibuprofen or naproxen for his headaches. Finally, Plaintiff testified that he saw an eye doctor in the ADC for his glasses. He testified this physician "did not say much," and Plaintiff did not remember if the doctor suggested any further evaluation or treatment. Plaintiff did not allege the over-the-counter medication was ineffective in treating his headaches. He did not provide any

detail as to the severity of the headaches.

A knot on the head, a scraped finger, and some redness of the skin, none of which required so much as an ice pack or an over-the-counter anti-inflammatory as treatment, are *de minimis* injuries which cannot support an Eighth Amendment claim. To the extent Plaintiff alleged he received over-the-counter anti-inflammatories (naproxen and ibuprofen) for his headaches, such treatment is precisely the type of treatment a free-world individual could do at home without professional medical care. Plaintiff's headaches are therefore *de minimis* as well.

Even if Plaintiff had alleged serious injuries, the record indicates these were surprise attacks which, by definition, cannot satisfy the subjective prong of the failure to protect test. *See, e.g., Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) ("We have held in several cases that qualified immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate.") The fact that Defendant Frazier or Salyers may have violated an SCDC color group policy, which indicated some color groups should not be mixed, is not sufficient to allege a constitutional violation. *See Walton*, 752 F.3d at 1122 ("violating an internal policy does not *ipso facto* violate the Constitution"). Nor do any of the facts in the record support an inference that any Defendant should have been alerted to a specific danger to Plaintiff from Cobbs, Beagles, or Chestine.

Regarding the incident in the recreation yard, Plaintiff testified he and Chestine were in the same inmate color group. Plaintiff testified he took it upon himself to approach Chestine in the yard on behalf of an older inmate. He further testified Chestine did not immediately "jump" him after the conversation, and the two had been in the recreation yard for nearly an hour. He also testified he did not expect Chestine to assault him; indeed, the video shows Chestine to be a much

smaller and lighter individual than Plaintiff. The video also shows Plaintiff gesturing or pointing at Chestine immediately before Chestine pushed him. Thus, by both Plaintiff's own testimony and the video, Plaintiff initiated the altercation with Chestine.

Regarding the other two incidents, Plaintiff was not sure what color group either Beagles or Cobbs were in, but did not believe they were the green color group. Plaintiff testified that both inmates had engaged in derogatory name-calling and threats against him prior to June 16, 2015, because he was a sex offender. He testified these comments were "pretty much the same" as what most inmates directed towards the green color group.

On June 16, 2015, Plaintiff testified Beagles was yelling "snitch," and Plaintiff believed Cobbs said something to him before he threw the mop bucket, but other inmates were yelling so he was not sure. He further testified he did not know who yelled the threats, but other inmates had yelled things to the effect that "this isn't over yet," and "we're going to get you" concerning his reporting of the commissary mistake. He testified this was the first day he had received these types of comments. Plaintiff further testified that he had passed out commissary in the pod containing Cobbs twice a week for about three months before June 16, 2015. He was not sure how long Cobbs had been in the pod, but June 16, 2015 was not the first day Cobbs was in the pod.

Thus, according to Plaintiff's allegations and testimony, Cobbs engaged in only general derogatory name calling directed at the sex offenders in the green pod. The only specific threat or interactions he could attribute to Cobbs was that Cobbs said he wanted to rub Plaintiff's butt, and that he tried get in fights with him when he walked by Plaintiff's cell. In the video of the incident, Plaintiff did not seem alarmed by Cobbs' presence; indeed, he appeared to completely ignore Cobbs. He did not know if Cobbs actually said anything prior to hitting him with the mop bucket on June 16, 2015. Further, he had passed out commissary to that pod twice a week for about three

months prior to the incident, and June 16, 2015 was not the first day that Cobbs had been in the pod when he did so. General name calling and threats alone are not sufficient to impute actual knowledge of a substantial risk of harm. *See Prater v. Dahm,* 89 F.3d 538, 541 (8th Cir. 1996) ("threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm").

Defendants acknowledge that Defendant Salyers may have been negligent when he did not ensure that Beagles went to his cell as Salyers had instructed, or that Beagles was locked into that cell before turning to Plaintiff to pass out his "fresh favorite." Plaintiff testified he did not believe Defendant Salyers intentionally violated policy, but he should have seen that Beagles was not in his cell as instructed. Plaintiff further testified that the incident happened very quickly, and he himself only had time to turn his head. Taking Plaintiff's allegations in the light most favorable to his case, it is clear that Salyer's actions constituted only mere negligence.

Because Plaintiff has alleged only *de minimus* injuries from surprise attacks, there are no genuine issues of material fact in dispute, and his individual capacity failure to protect claims fail as a matter of law.

Finally, Plaintiff alleged in his Complaint that he named Defendant Sheriff Hollenbeck in the law suit because he did not enforce the policies of SCDC. Plaintiff testified he was suing him because he was sheriff and oversees the jail. He further testified Defendant Hollenbeck had no personal involvement with any of the incidents.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional

activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).

Based on Plaintiff's testimony, his claim against Defendant Hollenbeck is based solely on the theory of *respondeat superior* and fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (Doc. 30) be **GRANTED**, and that Plaintiff's Complaint be dismissed against all remaining parties with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of July, 2017.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE